IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | No. 04-506-1 |
| ERIC HUMBERT : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                                    **July 27, 2007**

Defendant Eric Humbert, proceeding *pro se*, was convicted following a four-day jury trial of conspiracy to commit armed bank robbery, conspiracy to commit carjacking, carjacking, and two related firearms charges. *See* 18 U.S.C. §§ 371, 924, 2119 (2007). Presently before the Court are Defendant's post-trial motions for judgment of acquittal and, in the alternative, a new trial. *See* FED. R. CRIM. P. 29 & 33. For the following reasons, Defendant's motions are denied.

**I.     BACKGROUND**

On September 23, 2004, Defendant and his co-Defendants Kevin Jenkins and Rasheen Jones were charged pursuant to a multi-count superseding indictment with various conspiracy, carjacking, and firearms offenses. Jones pled guilty on February 8, 2005, and the Court severed Jenkins's and Humbert's cases.

In late November 2006, after an extensive colloquy, the Court granted Defendant's motion to proceed *pro se*.[1] The Court appointed Steven Britt, who was acting as Humbert's Counsel before he chose to represent himself, to act as stand-by counsel. Defendant's trial took place in mid-

---

[1] By that time Defendant was working with his third attorney and had already been filing *pro se* motions on a regular basis.

December 2006.

Viewed in the light most favorable to the government, the evidence presented at trial can be summarized as follows. Sometime in the spring of 2003, Humbert approached Jenkins and Jones about the possibility of robbing a bank in southern New Jersey that Humbert had successfully robbed before. The plan was for the three men to travel to Salem County, New Jersey in two cars – Jones's car and Jenkins's car – and then steal a minivan to use in the actual robbery, because a minivan provided the easiest means of egress and ingress. After the minivan was stolen, Defendants planned to move Jones's and Jenkins's cars to a "switch spot." During the bank robbery Jones would remain at the switch spot with the cars. Humbert and Jenkins were to rob to the bank and then drive to the switch spot and transfer the money and guns from the minivan into Jenkins's car. After the transfer of the money and guns to the switch vehicle, Humbert and Jones would drive back to Philadelphia in Jones's car, and Jenkins would drive his car containing the contraband. Jones's car would act as both a blocker and decoy vehicle during the return trip, shielding Jenkins's car from view and misleading police if they were looking for a car with two black males.

On May 22, 2003, the men traveled to Salem County, New Jersey in two cars with the intention of carrying out the plan. After familiarizing themselves with the area and surrounding roads, they returned to the bank but aborted the robbery due to a police presence. Humbert and his co-Defendants then returned to Philadelphia.

Defendant was not permanently dissuaded, however, and a few days later, on May 27, 2003, he rallied Jones and Jenkins for another sojourn into New Jersey. Jones rented a Dodge Ram pickup truck, and Jones and Humbert rode in the rented truck while Jenkins drove in his own car.

After arriving in Salem County, Jenkins parked his car in a lot near a Cracker Barrel

restaurant and joined Humbert and Jones in the Dodge Ram. The three drove around the area looking for a minivan to steal. Ultimately, they spied and decided upon a minivan parked inside the attached garage of a ranch-style home.

Humbert and Jenkins exited the rented truck and unlawfully entered the home, in which the Robinsons, an elderly couple, lived. They ordered the Robinsons at gunpoint to turn over the keys to their minivan. Jenkins took Mr. Robinson, who was suffering from Alzheimer's Disease, into a bathroom, tied him up, and left him in the tub. Meanwhile, Humbert tied up and sexually assaulted Mrs. Robinson in the master bedroom. After the sexual assault, he took cash from her purse and the keys to the minivan. Humbert and Jenkins then left the house in the Robinsons' van.

When they got outside, they realized that Jones and the Dodge Ram were both missing. Jones was scared off the scene by a diligent security officer from Conectiv, a business located near the Robinsons' home, who not only approached Jones multiple times after he gave her evasive answers to her queries about his intentions in the area, but who also followed him long enough to record the truck's license plate number. Without Jones, the plan to rob the bank had to be aborted once again, and Jenkins and Humbert abandoned the minivan in the Cracker Barrel parking lot and returned to Philadelphia in Jenkins's car.

Law enforcement officers from New Jersey located and arrested all three Defendants in connection with the home invasion, robbery, and sexual assault. Investigators from the FBI eventually met with Jones as the case was proceeding in New Jersey state court. Jones explained to the FBI that the actual reason the three men were in Salem County on May 22 and 27, 2003, was to rob a bank. In response to that information, the case was adopted by federal authorities, and all three men were indicted in federal court.

On December 13, 2006, after a four-day trial, the jury convicted Humbert of all five counts. Defendant filed his post-trial motions, unaccompanied by briefing, on December 19, 2006. The Court granted Defendant thirty additional days to file one consolidated brief in support of his motions. Following four additional extensions of time and numerous letters and motions by Defendant regarding various aspects of incarceration, the Court set July 15, 2007 as the final deadline for filing post-trial briefs. To date, Defendant has not filed any such briefs.

The Court now rules on Defendant's motions without the benefit of briefing because it is convinced that further extensions are unwarranted, fruitless, and that Defendant is purposefully engaged in dilatory tactics. The Court has followed up with the Federal Detention Center in response to Defendant's many motions and letters and is satisfied that, after more than seven months, Defendant has had ample time and access to legal and writing materials to draft his briefs.[2] Any further delay will not serve the interests of justice.

## II.   STANDARD OF REVIEW

In considering a claim that the evidence was insufficient to support a conviction pursuant to Federal Rule of Criminal Procedure 29, a district court views the evidence "in the light most favorable to the government and affirm[s] the judgment if there is substantial evidence from which

---

[2] In a poorly reasoned strategy to convince the Court that he was trying his best to complete his briefs but was being stymied by the unreasonable restrictions placed on him by the prison staff, Humbert asserted on more than one occasion that he lacked adequate writing implements. Despite this apparent shortcoming, Defendant managed to file five motions and numerous letters during the seven month period. No explanation was provided for why Defendant's writing tools worked perfectly well when he penned the often lengthy motions and letters regarding alleged malfeasance by the prison staff but malfunctioned when he attempted to formulate his post-trial memorandum.

any rational trier of fact could find [the defendant] guilt[y] beyond a reasonable doubt." *United States v. Frorup*, 963 F.2d 41, 42 (3d Cir. 1992); *see also* FED. R. CRIM. P. 29.  If evidence emerges from the trial that supports the jury's verdict, regardless of how probative the court believes such evidence to be, then the defendant's motion for a new trial based on insufficient evidence should be denied.  *See United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989) (citation omitted).

Pursuant to Federal Rule of Criminal Procedure 33, a court may grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a).  Such circumstances exist where, *inter alia*, the verdict is against the weight of the evidence.  *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003).  A new trial is warranted under this standard only if the court believes that "there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 151 (3d Cir. 2002) (citations omitted). Motions for a new trial based a claim that the verdict is against the weight of the evidence should only be granted in exceptional cases.  *Gov't of the Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987).

### III.   DISCUSSION

#### A.   Defendant is Not Entitled to a Judgment of Acquittal

Defendant appears to argue that he is entitled to a judgment of acquittal because there was insufficient evidence to prove any of the charges.  (Def.'s Mot. for J. of Acquittal Notwithstanding the Verdict or For a New Trial [hereinafter Def.'s Mot.] at 1, ¶ 4.)

##### 1.   *Conspiracy to Commit Armed Bank Robbery*

To convict for conspiracy to commit armed bank robbery the government must show beyond a reasonable doubt an agreement to commit the substantive offense of armed bank robbery and an

5

overt act in furtherance of the agreement. *See Salinas v. United States*, 522 U.S. 52, 63-64 (1997). The substantive offense of armed bank robbery occurs when: (1) a person knowingly takes money from the person or presence of another while it was in the custody of a bank; (2) the taking was by force and violence or intimidation; (3) the bank was insured by the FDIC; and (4) the person deliberately assaulted someone with a dangerous weapon or put the life of any other person in jeopardy by use of a dangerous weapon while the money was taken. *See* 18 U.S.C. § 2113 (2007).

There is substantial evidence to support the jury's verdict. Jones, Humbert's co-conspirator who entered into a plea agreement with the government in exchange for his testimony, explained in detail how he, Humbert, and Jenkins planned to rob "The Bank" in Salem County, New Jersey. Jones's testimony was corroborated by: (1) the testimony of other witnesses who viewed Defendants in the area; and (2) cell phone records.

At trial and again in his post-trial motions, Defendant raises the issue of FDIC insurance. (Def.'s Mot. at 3.) Agatha Fagan, a bank employee, gave undisputed testimony that "The Bank" was FDIC insured during the time period in question. (Dec. 12, 2006 Tr. at 212.) That evidence is sufficient to establish that the target of the conspiracy was an FDIC-insured bank. The fact that FDIC insurance does not cover banks for losses caused by robbery – a source of considerable consternation to Defendant – is irrelevant. *United States v. Spinello*, 265 F.3d 150, 153-59 (3d Cir. 2001); *United States v. Watts*, 256 F.3d 630, 633-34 (7th Cir. 2001) ("It is . . . of no consequence that FDIC insurance does not cover losses due to robbery.").

    2.    *Using or Carrying a Firearm in Furtherance of Conspiracy to Commit Armed Bank Robbery*

Defendant claims the evidence was insufficient to show that he used or carried a firearm

during the conspiracy to commit armed bank robbery. (Def.'s Mot. at 1, ¶4 & at 3.) The testimony provided by both Jones and Mrs. Robinson that Defendant possessed and wielded a gun is sufficient to support the jury's verdict. (Dec. 11, 2006 Tr. at 1.80; Dec. 12, 2006 Tr. at 2.65-2.67, 2.86-2.87.)

### 3. Conspiracy to Commit Carjacking

As mentioned above, to convict for conspiracy the government must prove beyond a reasonable doubt: (1) an agreement to commit a substantive offense; and (2) an overt act. *See Salinas*, 522 U.S. at 63-64. The substantive offense of carjacking occurs when a person, "with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation . . . ." 18 U.S.C. § 2119. Defendant admits that evidence exists to support the conclusion that he agreed to *steal* a motor vehicle but not to do so from the person or presence of another or with the requisite intent. (Def.'s Mot. at 3.)

To the extent Defendant is arguing that he lacked the requisite intent to cause death or serious bodily injury at the time he agreed to steal the car, such argument is not compelling. The Supreme Court has made clear that a defendant need have only the conditional intent to cause death or serious bodily injury if the target of the carjacking declines to turn over the keys. *See Holloway v. United States*, 526 U.S. 1, 11-12 (1999); *see also United States v. Brodie*, 403 F.3d 123, 147 (3d Cir. 2005) (explaining that to prove conspiracy the government must establish "at least the degree of criminal intent necessary for the underlying substantive offense . . . ."). The testimony regarding the manner in which Defendant and Jenkins carried out the home invasion and robbery provides substantial circumstantial evidence of agreement to cause death or serious bodily harm had the Robinsons resisted their demand for the keys to the minivan. Indeed, the government presented evidence that

Humbert brutally sexually assaulted Mrs. Robinson even though she *did* turn over the keys without a struggle. The evidence that Humbert and Jenkins chose to steal the minivan from an attached garage of a home not by hot-wiring it but by storming into the house with guns drawn and demanding the keys directly from the owners is sufficient to establish their conditional intent to cause death or serious bodily harm if necessary to obtain the vehicle. Thus, sufficient evidence exists for the jury to have concluded that Defendant agreed with Jenkins to steal the car with the requisite state of mind.

Reading Defendant's motion broadly, he may also be asserting that he never agreed with Jenkins to take the minivan "from the person or presence of another . . . ." 18 U.S.C. § 2119. This argument is foreclosed, however, by Third Circuit precedent, which establishes that the "presence" requirement is satisfied when a defendant goes into a victim's house to obtain the keys to a vehicle located outside. *See United States v. Lopez*, 271 F.3d 472, 486 (3d Cir. 2001) (affirming conviction for carjacking where defendants took keys from owner inside her home); *United States v. Lake*, 150 F.3d 269, 272 (3d Cir. 1998) (carjacking conviction upheld where keys forcibly taken from woman whose van was parked on hilltop and not visible from location of robbery). Thus, substantial evidence exists to support the jury's determination that Humbert agreed with Jenkins to take the minivan from the person or presence of another.

    4.  *Carjacking*

Defendant contends that the evidence as to "three of the prongs" required to prove carjacking is insufficient to sustain his conviction on this count. (Def.'s Mot. at 4.) Specifically, Defendant challenges the evidence as to the intent, presence, and interstate commerce requirements of 18 U.S.C. § 2119. (*Id.*)

With respect to the element of intent, the above discussion related to the conspiracy charge confirms that the jury had substantial evidence from which to conclude that Defendant acted with the intent to cause death or serious bodily harm while committing the carjacking. This element is satisfied provided the jury believed that Defendant had the intent to cause death or serious bodily harm if the Robinsons had resisted Defendant's and Jenkins's efforts to obtain the keys to the minivan. *See Holloway*, 526 U.S. at 11-12. In light of the evidence that Defendant and Jenkins entered the house with guns drawn, Jenkins bound Mr. Robinson and put him in the tub, and Defendant bound and sexually assaulted Mrs. Robinson even though the Robinsons complied with Defendants' demands, substantial evidence exists to support the jury's conclusion that Defendant acted with the intent to cause death or serious bodily injury.

Defendant next attacks his carjacking conviction on the ground that insufficient evidence was presented on the requirement that the vehicle be taken from the person or presence of another. This argument, too, is unpersuasive. The presence requirement has been interpreted broadly by the Third Circuit, *see, e.g., Lake*, 150 F.3d at 272, and the evidence regarding the proximity of the vehicle to the victims (inside the attached garage of their home) as well as the victim's effective control over the vehicle amply supports the jury's determination that the government satisfied the presence requirement in 18 U.S.C. § 2119.

Lastly, Defendant contests the sufficiency of the evidence with respect to the mandate that the vehicle have moved in interstate or foreign commerce. The government presented direct testimony on this point, providing substantial evidence to support the jury's finding that the car passed through interstate or foreign commerce. (Dec. 11, 2006 Tr. at 1.114-1.116.)

>    5.   *Using or Carrying a Firearm in Furtherance of Conspiracy to Commit Carjacking and Carjacking*

As with the previously discussed gun charge, the testimony from both Jones and Mrs. Robinson that Defendant possessed a gun provided a substantial evidentiary basis for the jury's determination on this count. (Dec. 11, 2006 Tr. at 1.80; Dec. 12, 2006 Tr. at 2.65-2.67, 2.86-2.87.)

>  **B.   Defendant is Not Entitled to a New Trial Because the Verdict is Not Contrary to the Weight of the Evidence**

Among Defendant's laundry list of asserted errors he includes a claim that the verdict is "contrary to the weight of the evidence." (Def.'s Mot. at 1, ¶ 3.) As discussed above, a new trial should be granted under this standard only if the court believes that "there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *Johnson*, 302 F.3d at 151 (citations omitted). In assessing a defendant's motion for a new trial on the ground that the verdict is contrary to the evidence, a district court exercises its own judgment as to the weight of the evidence. *Brennan*, 326 F.3d at 189.

The Court declines to grant Defendant a new trial on this ground because there is not a serious danger that an innocent person has been convicted. Jones testified at length about the plan to drive to New Jersey, steal a van, and rob a bank. Moreover, the government presented evidence that Defendant entered the Robinsons' home and, along with his co-conspirator, obtained the keys to their minivan using both force and threats. Jones and Mrs. Robinson also testified that Humbert was carrying a gun throughout the events. Accordingly, Defendant's motion for a new trial on the basis that the verdicts are against the weight of the evidence is denied.

>  **C.   None of Defendant's Additional Claims of Error Have Merit**

At the outset of his motion Defendant alleges eleven bases upon which the Court should grant

a judgment of acquittal or a new trial. (Def.'s Mot. at 1-2.) The Court has addressed several of them in the preceding discussion and now turns to the remaining claims.³

### 1.     The Jury Charge

In two separate paragraphs Defendant objects to the jury charge. (Def.'s Mot. at 2, ¶¶ 5, 8.) He directs the Court to the "grounds . . . set forth in the exceptions taken to the charge." (*Id.* at 2, ¶ 8.) Accordingly, the Court will discuss each of Defendant's objections in turn.

At trial, Defendant objected to the use of the word "impartial" in the following context: "So the presumption of innocence alone is sufficient to acquit a defendant unless the jury is satisfied beyond a reasonable doubt of the defendant's guilt. And this can be done only after careful and impartial consideration of all of the evidence." (Dec. 13, 2006 Tr. at 3.12.; Court's Final Jury Instructions at 8.) It is hard to imagine how this use of the word "impartial" is offensive to Defendant. Suffice it to say that any such objection is frivolous.

Defendant also objected to the portion of the jury charge instructing the jurors that they were free to draw "reasonable inferences" from the evidence. (Dec. 13, 2006 Tr. at 3.12; Court's Final Jury Instructions at 15.) This argument is entirely without merit because drawing reasonable inferences is a core responsibility of the jury and an activity expressly approved by the Third Circuit. *See United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (*citing United States v. Kapp*, 781 F.2d

---

³ Three of Defendant's claims are either unintelligible or so broad as to be impossible to address:
>   (1) Defendant's objection that the Court erred "in admitting [certain] evidence . . . against him, in violation of his Constitutional rights." (Def.'s Mot. at 2, ¶ 6.)
>   (2) The claim that the "trial court erred in permitting a biased and prejudiced jury to consider the merits of the case." (Def.'s Mot. at 2, ¶ 9.)
>   (3) Defendant's argument, which appears to be a reiteration of point one above, that the "trial court erred in its ruling on the admissibility of evidence as shown by the objections taken at the trial." (Def.'s Mot. at 2, ¶ 10.)

1008, 1010 (3d Cir. 1986)).

Defendant further claimed that the jury should be instructed that if they believed a witness to have testified falsely as to one issue, they should disbelieve the testimony of that witness in its entirety. (Dec. 13, 2006 Tr. at 3.12.) As the Court explained to Defendant at the time, whether and to what extent to credit the testimony of a witness is a matter entrusted solely to the jury. *See* Third Circuit Model Criminal Jury Instructions §§ 3.04, 4.26 (2007); *Lambert v. Blackwell*, 387 F.3d 210, 256 (3d Cir. 2004).

Defendant's penultimate objection during the charging conference was related to the portion of the instructions explaining that the government is not required to utilize any specific investigative techniques in collecting evidence. (Dec. 13, 2006 Tr. at 3.13.) This instruction is consistent with established law. *See* Third Circuit Model Criminal Jury Instructions §§ 3.05, 4.14; *see also United States v. Saldarriaga*, 204 F.3d 50, 51-52 (2d Cir. 2000).

Defendant raised a final objection to the following instruction:

> You are here to determine the guilt or innocence of the defendant from the evidence in this case. You are not called upon to return a verdict as to the guilt or innocence of any other person or persons. You may not draw any inference, favorable or unfavorable, toward the government or the defendant, from the fact that other persons were not named as defendants in the indictment, and you should not speculate about the reasons for this. So, if the evidence in the case convinces you beyond a reasonable doubt of the guilt of the defendant, then you should find the defendant guilty, even though you may believe one or more other persons are also guilty.

(Court's Final Jury Instructions at 36-37.) Defendant provided no explanation for why this instruction was legally faulty. Moreover, it is entirely consistent with existing law. *See United*

*States v. Thomas*, 998 F.2d 1202, 1205 (3d Cir. 1993); *United States v. Panepinto*, 430 F.2d 613, 615 (3d Cir. 1970).

In connection with the jury instructions, Defendant also attempted before the final day of trial to seek a limiting instruction with respect to the jury's consideration of evidence involving the sexual assault at the Robinson home.[4] The Court *did* include such instruction: "The defendant is not on trial for any act or conduct not charged in the indictment. Evidence that the defendant may have committed an act at one time or on one occasion is not admissible to prove the character of the defendant in order to show that he acted in conformity with that act in this case." (Court's Final Jury Instructions at 38.)

    2.    *Jurisdiction and Venue*

Defendant asserts that the Court lacks jurisdiction over this case and that venue here is improper. (Def.'s Mot. at 2, ¶ 7.) The Court has jurisdiction over this action because Defendant was charged under federal statutes and appeared before the Court. *See United States v. Harrison*, Civ. A. No. 03-430, 2006 WL 287857, at *3 n.16 (E.D. Pa. Feb. 7, 2006) (citing 18 U.S.C. § 3231; *Frisbie v. Collins*, 342 U.S. 519, 522 (1952)).

Defendant's objection as to venue also fails. Defendant raised venue as a possible issue prior to trial.[5] (Dec. 8, 2006 Tr. at 24.) After Defendant failed to request a venue instruction during the

---

[4] The Court notes that the only reason evidence of the sexual assault was admitted in this case was that Defendant refused to stipulate to the existence of his DNA at the scene. Accordingly, in the course of introducing the DNA evidence (Defendant's sperm) the government was entitled to explain how Defendant's DNA ended up in the Robinsons' home.

[5] The decision of Defendant's previous counsel not to contest venue was almost certainly a strategic one. Defendant is from Philadelphia, and this represents his home district. Moreover, by avoiding trial in New Jersey, Defendant bypassed the possibility that citizens from southern New Jersey would be on the jury.

charging conference, however, the Court did not instruct the jury on venue.

In *United States v. Perez*, the Third Circuit provided a lengthy discussion concerning the procedural requirements for maintaining a venue objection and the circumstances under which a district court should present the issue to the jury. 280 F.3d 318, 327-336 (3d Cir. 2002). With respect to preserving the issue, *Perez* held that:

> [W]here the indictment alleges venue without a facially obvious defect, the failure to instruct the jury to determine whether that venue is proper is reversible error only when (1) the defendant objects to venue prior to or at the close of the prosecution's case-in-chief, (2) there is a genuine issue of material fact with regard to proper venue, and (3) the defendant timely requests a jury instruction.

*Perez*, 280 F.3d at 327. In the instant case, even assuming Defendant satisfied the first two prongs of the *Perez* test, he failed to request a jury instruction on venue.[6] (Dec. 13, 2006 Tr. at 3.8-3.14; Dec.14, 2006 Tr. at 4.2-4.12.)

### 3. Evidence at Trial that Defendant was Incarcerated

Defendant's final miscellaneous objection is that the jury heard from two different witnesses that he was incarcerated and from one of those witnesses that he was involved, along with that witness, in beating another prisoner. (Def.'s Mot. at 2, ¶ 11.) Defendant fails to note that he called the witnesses in question and therefore opened the door to the nature of his relationship with those witnesses as it pertained to their motives to lie for him. *See, e.g., United States v. Anderson*, 676 F. Supp. 604, 606 (E.D. Pa. 1987).

---

[6] By the time of trial Defendant was acting *pro se*. Therefore, any failure to preserve this issue lies entirely at his doorstep.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's motions for a judgment of acquittal or, in the alternative, a new trial, are denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | No. 04-506-1 |
| ERIC HUMBERT | : | |

**ORDER**

AND NOW, this **27th** day of **July**, **2007**, upon consideration of Defendant's Motions for a Judgment of Acquittal or, in the Alternative, a New Trial, and Defendant's Motion for *Ex Parte* Injunction and Restraining Order, and for the foregoing and following reasons, it is hereby **ORDERED** that:

1. Defendant's motions for a judgment of acquittal or a new trial (Document Nos. 167, 168, & 170) are **DENIED**.

2. Defendant's motion for injunctive relief and a temporary restraining order (Document No. 225) is **DENIED**.[1]

3. Defendant's sentencing is scheduled for **August 27**, **2007**, at **10:30 a.m.** in **Courtroom 5C**.

BY THE COURT:

*/s/ Berle M. Schiller*

**Berle M. Schiller, J.**

---

[1] As part of this criminal case Defendant has filed a motion pursuant to Federal Rule of *Civil* Procedure 65 seeking injunctive relief against certain individuals within the Federal Detention Center. Defendant requests that the Court consolidate this motion with the instant criminal proceeding. Not only has Defendant failed to property raise his Rule 65 motion, but it is plainly inappropriate to "consolidate" such a civil action with his ongoing criminal case. *See* FED. R. CIV. P. 1.